**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RICHARD WILLIAM KINCAID** | § | |
| **#2439041** | § | |
| | § | |
| **V.** | § | **W-25-CA-333-ADA** |
| | § | |
| **ERIC GUERRERO** | § | |

## <u>ORDER</u>

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (#1), Petitioner's Appendix to Application (#1-1), Petitioner's Memorandum of Law in Support (#1-2), Petitioner's Appendix to Memorandum (#1-3), Respondent's Answer (#9), and Petitioner's Reply (#12). Petitioner is proceeding pro se and has paid the filing fee. For the reasons set forth below, Petitioner's application for writ of habeas corpus is denied.

<u>STATEMENT OF THE CASE</u>

**A.     Petitioner's Criminal History**

According to Respondent, the Director has lawful custody of Petitioner pursuant to a judgment and sentence of the 82nd District Court of Falls County, Texas on March 9, 2023, for the third-degree felony of theft. *Ex parte Kincaid*, No. WR-43,030-03 (SHCR-03) (#10-35) at 63. The conviction was enhanced to habitual status because Petitioner

had two prior felony convictions. *Id.* at 8. The first indictment alleged that on or about January 15, 2022, Petitioner "did then and there unlawfully appropriate by acquiring or otherwise exercising control of a property, namely, a 26-foot Southshore boat and trailer, of the value of over $30,000 but less than $150,000, from Ross Griggs, the owner thereof, without the effective consent, and with intent to deprive the owner of the property." *See Kincaid v. State*, No. 01-23-00254-CR, 2024 WL 2752370 at *1-2 (Tex. App.—Houston [1st Dist.], May 30, 2024, pet. refused) (citing Tex. Penal Code § 31.03(e)(5)). The second indictment alleged that or about January 15, 2022, Petitioner "did then and there intentionally and knowingly enter a building, or a portion of a building, without the effective consent of Ross Griggs, the owner thereof, and attempted to steal or committed theft of property, namely: [t]ools, toolbox and fishing poles, owned by Ross Griggs." *Id.* (citing Tex. Penal Code § 30.02(a)(1)). Petitioner pleaded not guilty to both charges and both charges were tried together. A jury convicted Petitioner of theft but acquitted him of burglary. Petitioner pleaded true to two enhancement paragraphs. The judge assessed punishment at seventy-five years of imprisonment. *Ex parte Kincaid*, No. WR-43,030-03 (SHCR-03) (#10-35) at 63.

Petitioner appealed and on May 30, 2024, the First Court of Appeals of Texas affirmed the conviction, determining that, while some of the trial evidence was inadmissible, the error was harmless because there was sufficient other evidence of guilt. *Kincaid*, 2024 WL 2752370. The Texas Court of Criminal Appeals (TCCA) refused Petitioner's petition for discretionary review on September 4, 2024. *Id.*; *see also* Notice

(#10-28). Petitioner subsequently filed a pro se petition for discretionary review on October 10, 2024 (#10-29), but the TCCA took no action on that filing.

Petitioner filed a state habeas application on January 9, 2025, including a declaration signed on October 10, 2024. SHCR-03 (#10-35) at 69; 92. The TCCA denied the application without written order on March 5, 2025. SHCR-03 (#10-38). The TCCA also dismissed Petitioner's motion for rehearing on March 21, 2025. SHCR-03 (#10-40). Petitioner filed his federal petition on August 1, 2025, though it was signed on May 12, 2025. Pet. (#1) at 1; 22.

**B.    Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. Faulty indictment, lack of jurisdiction;

2. Prosecutorial misconduct on the basis of

    a. Discovery violations;
    b. Illegal use of cell phone data testimony at trial;
    c. Misrepresentation regarding the value of the boat;
    d. Improper comments;
    e. Use of extraneous and propensity evidence;
    f. Eliciting inflammatory testimony and making comments about drugs;
    g. Vindictive prosecution;
    h. Witness coaching;
    i. Manufacturing evidence;
    j. Failing to disclose the substance of an interview with a co-defendant;

3. A statement was improperly excluded as hearsay;

4. Cell phone testimony and evidence was collected and presented without a warrant;

5. The cumulative effect of extraneous and propensity evidence was prejudicial;

6. Objection to the jury charge and jury deliberations;

7.  Improper questioning at the punishment phase;

8.  The court of appeals erred in failing to reverse the conviction.

Pet. (#1) at 1-34; Memo. (#1-1) at 1-67; Memo. Appx. (#1-3).

## C.   Factual Background

The First Court of Appeals, in *Kincaid v. State*, No. 01-23-00254-CR, 2024 WL 2752370, summarized the trial as follows:

### 1. Luke Sell

Luke Sell, a resident of Belton, Texas, is a farmer and the general manager of a cotton gin at an agricultural supply company. Ross Griggs is one of his landlords and Sell sharecrops on Griggs's land in Falls County.

On January 15, 2022, Sell was plowing Griggs's property in Barclay. As he plowed, he saw a white SUV approach a house on Griggs's property near where he was working. The SUV had a "magnetic sticker that showed that the vehicle was from some form of business." Sell saw three people exit the SUV and walk around the property. About fifteen minutes later, the SUV backed onto the driveway in front of a boat on the property and hooked it up to the SUV. Sell called Griggs, who told him he had not authorized anyone to take the boat. According to Sell, the boat was "way too much weight" for the SUV, which was "overloaded."

Sell stayed on the phone with Griggs, telling Griggs which direction the SUV was heading. Sell then called the constable and told him what was happening and gave him a description of the SUV. Sell eventually drove to the place where the boat and SUV had been pulled over by law enforcement. He gave a statement to the Falls County Sheriff's Department, helped detach the boat from the SUV, and went back to work.

### 2. Ross Griggs

Ross Griggs lives in Falls County. He testified that on January 15, 2022, after a phone call from Sell, he headed toward the town of Westphalia "to try to catch up with [his] boat." As he followed the SUV that was towing the boat, he gave directions to the Falls County Sheriff's Department about the location of the boat. When the SUV stopped, Griggs saw at least two people get out "and [they] were talking around the truck and the boat." The SUV began driving again and eventually a patrol car caught up with it. When the officer pulled up behind the SUV, the SUV stopped. The occupants did not try to run away or drive off.

The driver and two passengers of the SUV were arrested. Griggs looked inside the SUV and saw items that were taken from his property, such as a toolbox, gas cans, and fishing rods and reels.

Griggs identified [Petitioner] as one of the men in the SUV. Griggs testified he did not give [Petitioner] permission to take his boat, to be on his property, or to take any other items. Griggs testified the boat was worth approximately $50,000 at the time of trial.

### 3. Terry Kimble

Officer Terry Kimble was a police officer for the City of Lott on January 15, 2022. He was working a funeral escort when a call came over the radio about a stolen boat being pulled by a white SUV heading toward Lott. He found the SUV, activated his siren and lights, and conducted a traffic stop of the SUV and boat. Officer Kimble identified [Petitioner] as the driver of the SUV. Officer Kimble ordered [Petitioner] and the two passengers out of the SUV. He took [Petitioner] to the Falls County Jail.

Officer Kimble was wearing a bodycam, but he testified it was difficult to hear most of what was on it because the wind interfered with the audio. A shortened version of the bodycam video was played for the jury. During the nearly nine-minute video, most of which is unintelligible, Officer Kimble stated he smelled marijuana in the SUV.

Officer Kimble testified that [Petitioner] was found with a "little bit of green, leafy substance that [he] believe[d] to be marijuana," a marijuana pipe, and fake urine that [Petitioner] admitted owning. Officer Kimble stated he smelled marijuana in the SUV when he approached it. He acknowledged the green leafy substance could have been hemp.

After taking [Petitioner] to the Falls County jail, Officer Kimble took the fake urine and marijuana to the sheriff's office.

### 4. Mieshia Banks

Deputy Mieshia Banks was a patrol officer with the Falls County Sheriff's Department on January 15, 2022. She testified that she was the primary investigator on the case. Deputy Banks arrived on the scene after Officer Kimble stopped the SUV. Deputy Banks helped Officer Kimble detain the men from the SUV and then interviewed each man. She identified [Petitioner] as one of the men arrested that day.

Deputy Banks testified that needles with clear liquid were found inside the SUV. She said the suspects' phones were confiscated "to get a phone dump to establish the communication [that occurred] before the alleged crime took place," but her supervisors told her not to perform the phone dump.

**5. Keith Godley Jr.**

Officer Keith Godley Jr. testified he was a part of the investigation into the theft of the boat and burglary of a building. During the investigation, he retrieved [Petitioner]'s phone and turned it over to Deputy Banks, the primary officer on the case. He made copies of some texts from [Petitioner]'s phone of a conversation with one of the SUV's passengers. He testified that the texts did not pertain to the boat. He stated the text messages were about a drug transaction involving GHB, the "date rape" drug.

. . . .

In his opening argument, [Petitioner's] counsel argued the evidence would show [Petitioner] did not realize he was taking property without the owner's permission. But there was no testimony in support of that defense or any other. In closing, [Petitioner's] counsel pointed out that the alleged theft occurred in "broad daylight" in a vehicle that had [Petitioner's]ric name and phone number on it. Defense counsel argued [Petitioner] could have removed the magnetic sticker with his name from his SUV, but he did not. In addition, no one tried to run when the police stopped the SUV. Defense counsel reminded the jury that one of the SUV's occupants was not charged with theft, and he asked that [Petitioner] be given the same "benefit of the doubt" as the passenger who was not charged.

During its closing argument, the State referred to [Petitioner] as "[s]omebody high on dope":

> . . . When you're towing a big boat that's attached to a vehicle that's not even big enough to pull it. But it has signage on it. It's a way to not look suspicious, okay? It's just that somebody is dumb enough to do that. Somebody high on dope, dumb enough to do that.
> . . .
> So you got a vehicle that smells like marijuana. You got a marijuana pipe in your pocket. It fits that you're just that stupid.

The State also referred to the phone dump:

> I would have liked to have seen the dump—the phone dumped. There was evidence, as you heard about, drug dealing going on, you know. Dump that to learn more about what's going on as far as drug dealing. But as far as this case goes, he's not on trial today for drugs. Okay? We're not here for that. We're only here for the theft of this boat and the items inside.

*Kincaid*, No. 01-23-00254-CR, 2024 WL 2752370 at *2-6, 10-11.

**D.        Request for Evidentiary Hearing**

Petitioner appears to assert that his application for habeas relief raises factual questions, which have not been addressed by the state courts and that the state has failed to provide Petitioner with a full and fair hearing concerning his application. Petitioner appears to argue that he is entitled to an evidentiary hearing to resolve the factual questions left unresolved by the state courts.

DISCUSSION AND ANALYSIS

**A.        The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011). Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington*, 562 U.S. at 102 (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been

denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Harrington*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted).

As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

Petitioner raised all of his claims in his state habeas application and the Texas Court of Criminal Appeals rejected the merits of Petitioner's claims. As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claims by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination may not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Both explicit and implicit credibility choices made by a state court are afforded a presumption of correctness under 28 U.S.C. § 2254(d). *Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992) (citing *Lavernia*

*v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988)). And this presumption remains even though the TCCA did not explicitly rely on the findings when it denied relief. 28 U.S.C. § 2254(d); *Self*, 973 F.2d at 1214. Thus, Petitioner, as part of meeting his full burden under the AEDPA, must also rebut the strong presumption of correctness afforded the implicit findings with clear and convincing evidence. *Self*, 973 F.2d at 1214.

## B.    Evidentiary Hearing

Section 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
    (A) the claim relies on--
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to plead any allegations that would entitle him to a hearing. Accordingly, to the extent he requests an evidentiary hearing, Petitioner's request is denied.

## C.    Faulty Indictment (Claim 1)

Petitioner contends that his indictment was insufficient and defective. He argues he was not adequately informed of the charges against him and that the prosecutor misrepresented the value of the boat in order to enhance the degree of the offense. Petitioner contends that the insurance papers used to provide the valuation of the boat were acquired after the indictment was issued. Petitioner also argues that the indictment

did not include the enhancements. Petitioner asserts that this made it impossible for the jury and judge to render a proper judgment and sentence.

"[W]hether a defective state indictment confers jurisdiction on the state trial court is a matter of state law." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). The problem for Petitioner is that this Court does not function as a reviewer of a state's interpretation of its own laws. *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Instead, this Court is limited to deciding whether a conviction violated the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)). "The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Federal courts will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the jurisdictional issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that the court passed on the merits of the jurisdictional claim. *Id.* at 598–99.

Here, it is undisputed that Petitioner squarely presented this claim to the TCCA in his state habeas petition. *See* SHCR-03 (#10-35) at 76-77, 140-47. The TCCA applied Texas law and, in denying Petitioner's state habeas petition, implicitly determined that the state court had proper jurisdiction over his case and that the indictment was not

defective. While Petitioner repeats his arguments on the issue, this Court will not consider such claims in light of the TCCA's decision. *McCotter*, 775 F.2d at 598.

## D.      Hearsay Ruling (Claim 3)

Petitioner's alleged exculpatory statement to police officers when he was arrested was excluded as hearsay at trial. Petitioner contends that this exclusion was improper. Petitioner argues that the statement should not have been considered hearsay because it could have been corroborated by the police officers. Respondent argues this claim is without merit.

Again, federal habeas review is not an opportunity for a petitioner to challenge state court determinations on questions of state law. *See Estelle*, 502 U.S. at 67-68. Instead, Petitioner must show that the exclusion of his statement at the time of his arrest was a violation of the Constitution. *See Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011). Furthermore, state evidentiary rulings, even if erroneous, are matters for federal habeas corpus review only to determine "whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or violate an explicit constitutional right." *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (citing *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989)).

Here, Petitioner argues that his statements to officers were admissible under the Texas Rules of Evidence and exceptions to the hearsay rule. Petitioner's counsel created a bill of exception outside the presence of the jury to preserve what the excluded testimony would have been. 3 RR 54 (#10-4). Officer Banks testified that when he had stopped Petitioner, Petitioner told him that "he got a call from [his accomplice] Camp who

13

said someone had bought the boat and he needed him to tow it." *Id.* Officer Kimble testified that he did not recall Petitioner's response word for word but recalls Petitioner understanding the reason for the stop. *Id.* at 76. Kimble did not recall Petitioner telling him anything about why they were pulling the boat and where they were taking it. *Id.* Officer Godley testified that when he asked Petitioner "what happened and what his involvement in this was" Petitioner responded that "he was asked – or he was asked by Drew Camp to help move a boat that he was going to get paid for." *Id.* at 78. There was also a copy of Petitioner's written statement to Officer Godley. *Id.* at 79; 5 RR 18 (#10-6) (exhibit). Petitioner's statement explained that their purpose was picking up a boat and trailer that were to be moved to a different location. *Id.* Petitioner's statement does not indicate what Petitioner's understanding was regarding who was the legal owner of the boat or whether they had the legal owner's permission to move the boat. *See id.*

Even assuming that the statements were wrongfully excluded, Petitioner fails to show that the statements were crucial, critical, or highly significant to Petitioner's defense. *See Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). Petitioner mistakenly believes that these statements prove he did not know Camp did not have the right to move the boat and had now paid for it, but the statements do not support that. Petitioner's statements, even if admitted and determined to be credible by a jury, would not conflict with the jury's guilty verdict.

Finally, Petitioner raised this claim in his state habeas proceedings and the TCCA denied it. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or

14

in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims that his statements were improperly excluded as hearsay.

**E.      Cell Phone Evidence (Claim 4)**

Petitioner contends that the introduction of testimony regarding the text messages officers viewed on his phone at the scene of the crime violated his Fourth Amendment rights because he only gave permission to look at one specific text, the messages were obtained without a warrant, and they were not authenticated. Petitioner contends he was prejudiced by the evidence. Respondent argues that this claim is barred by law from federal habeas review. Petitioner replies by reiterating that the officers testified that they scrolled through Petitioner's phone and printed out text messages. Petitioner contends that the officers testified they had a warrant, but Petitioner argues they were ordered not to execute the warrant.

To the extent Petitioner challenges the failure of the trial court to suppress the text message evidence, that claim is barred pursuant to *Stone v. Powell*, which holds that, if the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief may not be granted to a state prisoner on that claim. 428 U.S. 465, 494 (1976). The *Stone* bar applies to "to all claims arising under the Fourth Amendment," including challenges to the seizure of evidence, *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) and even to claims "where the petitioner did not avail himself of the litigating opportunity provided by the state courts" *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012). Furthermore, "[e]rrors in adjudicating Fourth

Amendment claims are not an exception to *Stone*'s bar." *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006); *see also Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (holding that the *Stone* bar applies despite any error by the state court in deciding the merits of a Fourth Amendment claim).

Petitioner presented this claim in his state habeas application and the TCCA denied the claim. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims that testimony and text messages from his cell phone should have been excluded from trial because they were collected without a warrant.

## F.   Cumulative Effect of Extraneous Evidence and Failure of Appellate Court to Overturn Conviction (Claims 5 and 8)

Petitioner contends that throughout his trial there was testimony regarding allegedly bad acts, including information about drug dealing, that were unconnected to the crimes for which he was charged. Petitioner claims the effect of this evidence rendered his trial fundamentally unfair. Petitioner also contends that his conviction should have been reversed on direct appeal on this basis and that the appellate court erred in failing to do so. Petitioner argues that "extraneous and propensity testimonial evidence was repeatedly admitted every day of the trial in an underhanded way to harm the reputation of the defendant (myself) in front of the jury."

16

The state court of appeals did, in fact, rule that some of the extraneous evidence presented at trial was inadmissible. Specifically, the court found that the fake urine, marijuana, marijuana pipe, and three needles with a clear liquid that were discovered at the time of Petitioner's arrest were inadmissible as same transaction contextual evidence. *Kincaid*, 2014 WL 2752370 at *8-9. However, the court of appeals did not reverse Petitioner's conviction. Instead, the court of appeals determined that the inadmissible evidence was harmless error because there was sufficient other evidence of guilt. *Id.* In addition, the court of appeals found that the State did not emphasize the evidence. *Id.*

Even assuming that the evidence was inadmissible, the court of appeals determination that the error was harmless is not unreasonable. The court cited the closing argument of the prosecutor wherein the State reminded the jury that Petitioner was not on trial for anything having to do with drugs, just for theft. *Id.* Further, the court of appeals laid out the testimony that favored the guilty verdict and found that, even without the inadmissible evidence, there was strong support in the record for Petitioner's conviction. Finally, a limiting instruction was given to the jury regarding the consideration of evidence of extraneous offenses. *See* 3 RR 102-03 (#10-4).

Petitioner presented this claim in his state habeas application and the TCCA denied the claim, implicitly upholding the reasoning of the court of appeals. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims that

the cumulative effect of extraneous evidence rendered his trial fundamentally unfair or that the court of appeals erred in failing to overturn his conviction.

## G.      Jury Charge and Deliberations (Claim 6)

Petitioner contends that the jury sent a note to the judge during deliberations which indicated they did not understand the jury charge. Petitioner contends this is evidence that the prosecutor failed to prove intent. Petitioner also claims that the length of deliberations indicates the jury was not fully convinced. Finally, Petitioner asserts that the split verdict, finding him guilty of theft but not guilty of burglary, is inconsistent with a finding of the proper intent. Respondent argues that these claims lack merit and that Petitioner fails to meet his burden under AEDPA. In his reply, Petitioner reiterates that the jury's note during deliberations showed they were unable to determine intent and argues that the judge's response was unfairly prejudicial in referring to the jury charge.

Petitioner contends the jury instructions were improper because they failed to instruct the jury on the law applicable to circumstantial evidence, failed to instruct the jury that if Petitioner believed he had the authority to move the allegedly stolen boat, then he was not guilty, and failed to instruct the jury on lesser included offenses. "[T]he fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72. Moreover, "[i]mproper jury instructions in state criminal trials do not generally form the basis for federal habeas relief" and will only do so when the error in the jury charge "so infected the entire trial that the resulting conviction violates due process." *Galvan v. Cockrell*, 293 F.3d 760, 764–65 (5th Cir. 2002) [(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)].

18

Petitioner fails to meet his burden to show that the jury instructions were so defective as to infect the entire trial. As Respondent notes, Petitioner's argument regarding instruction on the issue of intent appears to refer to his belief that there is evidence in the record to show that Petitioner believed he was hired to move the boat and that he was unaware that the person asking him to move the boat was not the owner. Indeed, Petitioner's counsel asserted in opening statements that the evidence would show Petitioner did not know he was stealing. 2 RR 136 (#10-3). Counsel indicated that another participant would testify and that the evidence would show that person had lied to Petitioner about their ownership of the boat. *Id.* at 136-37. Thus, counsel asserted, Petitioner could not have the required intent to commit the crimes. *Id.* However, during trial, the other participant was never called as a witness and counsel did not argue in closing that the other participant had lied to Petitioner. Instead, counsel argued that the jury could infer that Petitioner did not have the requisite intent based on the fact that the truck used to take the boat was clearly identified and labeled with Petitioner's business and thus Petitioner could not have been trying to conceal his actions. Petitioner's desire for an instruction stating that "if [Petitioner] believed he had the authority to move the allegedly stolen boat, then he was not guilty," is based on a faulty premise and is meritless.

Petitioner also argues that the jury instruction should have included the lesser included offense of possession of stolen property. The Fifth Circuit has repeatedly held, however, that there is no constitutional right to such an instruction in a non-capital state

trial. *See, e.g. Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998). Thus, such a claim is not a basis for federal habeas corpus relief.

As for the jury note and response, Petitioner's claims are wholly without merit. The jury submitted a note which stated, in full: "where does the intent come into play with the law? Question: Can he be shown innocent with lack of . . . ." 3 RR 126-27 (#10-4). Neither party objected to the judge's response as follows: "Ladies and Gentlemen, you must confine your deliberations to all the evidence presented to you during the trial and the instructions provided to you in the Court's Charge." *Id.* at 127. Petitioner's assertion that this response improperly implied to the jury that "you must find the defendant guilty" (Pet. Reply (#12) at 4) is wholly without merit.

Finally, Petitioner presented these claims in his state habeas application and the TCCA denied the claim. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims that the cumulative effect of extraneous evidence rendered his trial fundamentally unfair or that the court of appeals erred in failing to overturn his conviction.

## H.   Punishment Phase Questioning (Claim 7)

Petitioner contends that during the punishment phase of trial the prosecutor focused only on showing that Petitioner was a drug dealer and user. Petitioner contends that the evidence presented of Petitioner's other bad acts "so infected the mind of the

judge" that the judge's final comment to Petitioner referenced Petitioner's "drug problem." Pet. (#1) at 15. Respondent argues that Petitioner fails to allege a constitutional violation and thus his claim must be dismissed. Petitioner replies by reiterating his claim but, does not dispute that there is no constitutional violation alleged. "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi*, 211 F.3d at 957 (citing *Orellana*, 65 F.3d at 31. To the extent that Petitioner's claim is construed as an assertion that his punishment was unconstitutionally excessive, he has failed to show any evidence to support such a claim. Thus, Petitioner's claim regarding the prosecutor's questioning and presentation of evidence during the punishment phase is dismissed.

## I.    Prosecutorial Misconduct (Claim 2)

Petitioner asserts his remaining claims all constitute forms of prosecutorial misconduct. Habeas relief may be granted on a claim of prosecutorial misconduct only where the errors committed by the prosecutor "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). This means the alleged conduct must render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986); *Dowthitt*, 230 F.3d at 755. "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal citation omitted). A trial will not be deemed

fundamentally unfair unless "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (citation omitted).

### 1. Discovery Violations (Parts a and j)

Petitioner alleges that the State failed to disclose and preserve alleged exculpatory evidence because they chose not to execute the "phone dump warrant" on Petitioner's phone. Petitioner claims that, had they executed that warrant, it would have provided proof from Petitioner's phone that he was being paid to move the boat on behalf of a person he believed to be the property holder.

Petitioner has failed to allege any discovery violation whatsoever. To the extent that there was evidence on Petitioner's phone that would have helped him at trial, he could have provided it to his attorney. Petitioner's phone was returned to him in March 2022. His trial was held in March 2023. Petitioner fails to explain why the State was obligated to search and provide evidence from Petitioner's own phone that Petitioner was in possession of for a year prior to trial.

Petitioner also contends that the State failed to disclose Officer Banks's supplemental report prior to trial. However, Petitioner neither provides nor specifies the content of this evidence or how it would have altered the outcome of trial. In any event, Petitioner fails to produce any evidence or provide any argument that shows that, were it not for these discovery issues, there is a reasonable probability that the verdict would have been different.

## 2.      Cell Phone Data (Part b)

Petitioner claims that Officers Godley and Banks testified about Petitioner's text messages but that the messages themselves were not in evidence. Petitioner indicates these messages were used to highlight alleged drug dealing. Petitioner claims that it was error to allow these comments during trial. This argument is in large part a different framework for Petitioner's Claims 5 and 8 discussed above regarding evidence of other bad acts. Here, however, Petitioner neither provides nor specifies the content of this evidence or how the exclusion of the evidence would have altered the outcome of trial. He appears to be arguing that the discussion of drugs was unfairly prejudicial. However, as discussed above, there was sufficient other evidence to justify the jury's verdict, even if the prejudicial evidence were inadmissible. In any event, Petitioner fails to show that, were it not for the cell phone data testimony, there is a reasonable probability that the verdict would have been different.

## 3.      Valuation Evidentiary Issues (Parts c and i)

Petitioner argues that there was insufficient evidence presented at trial regarding the value of the boat. Petitioner alleges that the insurance policy admitted into evidence was inaccurate and manufactured. Petitioner contends, therefore, that the prosecutor misrepresented the value of the boat.

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The

23

evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996).

Petitioner argues that the insurance policy was insufficient to establish the value of the stolen boat and that the policy itself was either fabricated or fraudulent. Petitioner also appears to contend that the policy is for a different boat than the boat described in the indictment. The evidence presented at trial consisted of both the insurance policy and the testimony of Griggs, the boat's owner. On cross-examination, there was no attempt by Petitioner's counsel to impeach Griggs on the value of the boat, to question the basis of the valuation, or to question the validity of the insurance policy. Further, Petitioner's counsel did not present any evidence that contradicted the value of the boat. While the jury could have determined that the valuation was not credible, there was no conflicting valuation for the jury to resolve. Viewed in a light most favorable to the prosecution, the evidence was sufficient to establish the value of the boat.

Petitioner's claim is nothing more than a disagreement with the jury's credibility choices. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes for which Petitioner was convicted beyond a reasonable doubt. Accordingly, Petitioner's claim does not warrant federal habeas relief.

### 4.    Improper Comments (Part d)

Petitioner contends that the prosecutor "made harmful comments throughout the trial toward myself and my attorney." Petitioner alleges these comments related to allegations of his drug use or drug dealing and that they prejudiced the jury and judge against him. Petitioner also contends that the prosecutor improperly commented on his decision not to testify and asked the jury to send a message to the community through their decision.

Although Petitioner cites several cases regarding a prosecutor's comment on the defendant's decision not to testify, the Court notes that a mere mention of the failure to testify does not automatically constitute a constitutional violation. Instead, as the Fifth Circuit has explained, "[t]he test for determining whether the prosecutor's remarks were constitutionally impermissible is: '(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence.'" *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting *United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir.1992)). The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark. *Id.; see also United States v. Green*, 324 F.3d 375, 382 (5th Cir. 2003) ("If there is an equally plausible explanation for the remark, the prosecutor's intent is not manifest.") (internal quotations omitted) (citing *Grosz*, 76 F.3d at 1326).

Here, the prosecutor referred to Petitoner's right not to testify and stated that she believed in that right "very strongly." 3 RR 122 (#10-4). The prosecutor then explained

that nonetheless the Defendant had the power to subpoena witnesses to testify on his behalf, but chose not to. *Id.* The implication of the argument was that Petitioner did not call any favorable witnesses because their story would not stand up to cross-examination. The prosecutor's argument was an attempt to remind the jury that Petitioner's counsel had told them during opening argument that there would be a witness that would testify that Petitioner did not know the boat was stolen, but that no such witness had been called. Any comment on Petitioner's failure to testify was minimal and, if anything, stressed that his failure to testify should not be used against him.

Even if the prosecutor's comments were improper, they were not sufficiently prejudicial to "cast serious doubt on the correctness of the jury's verdict." *See United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001) (citation omitted). Further, the trial court cautioned the jury through instructions that the Defendant's decision not to testify "cannot be taken as a circumstance against him" and instructed the jury that they "cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the Defendant." 3 RR 111 (#10-4). In any event, as discussed above, there was sufficient other evidence to justify the jury's verdict.

Petitioner also contends that the prosecutor improperly urged the jury to "send a message to the community." During closing argument the prosecutor stated: "Arrive at a verdict. Arrive at a verdict that tells other people like [Petitioner], 'We don't want our items in this county stolen.'" 3 RR 125 (#10-4). Again, however, when taken in context the prosecutor was not arguing that the jury should find Petitioner guilty solely to send a

message. Instead, the prosecutor made that statement immediately after telling the jury to only consider the evidence in this case and "stick with the jury charge." *Id.*

Petitioner also again challenges the prosecutor's comments regarding the drug-related text messages and the drugs found in Petitioner's truck. These comments were in response to Petitioner's counsel's argument that the State should have executed the warrant for the phone dump and implied that there was a nefarious reason for the failure to do so. In closing argument, the prosecutor stated:

> I would have liked to have seen the dump—the phone dumped. There was evidence, as you heard about, drug dealing going on, you know. Dump that to learn more about what's going on as far as drug dealing. But as far as this case goes, he's not on trial today for drugs. Okay? We're not here for that. We're only here for the theft of this boat and the items inside.

*Id.* at 123. Even if the prosecutor's comments at various points were improper, that alone would not establish that the TCCA's denial of Petitioner's claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 102–03). Petitioner has failed to show that, were it not for the prosecutor's comments, there is a reasonable probability that the verdict would have been different.

### 5.   Extraneous Evidence (Part e)

Here, Petitioner reframes his previous argument regarding extraneous offenses or bad acts through the lens of prosecutorial misconduct. Petitioner contends that the prosecution wrongfully used extraneous offenses or other bad acts throughout trial to

27

reflect badly on Petitioner's reputation and to show that Petitioner had a propensity to commit crimes.

For essentially the same reasons explained above, Petitioner's claim fails. Even without the evidence of Petitioner's other acts, there was strong support in the record for Petitioner's conviction. In addition, a limiting instruction was given to the jury regarding the consideration of evidence of extraneous offenses. *See* 3 RR 102-03 (#10-4). Petitioner has failed to show that, were it not for the prosecutor's references to extraneous offenses or bad acts, there is a reasonable probability that the verdict might have been different.

### 6.    Inflammatory Testimony Regarding Drugs (Part f)

Petitioner claims that the prosecutor's reference to GHB, "a date rape drug" improperly inflamed the jury. The only time that GHB was mentioned during trial was at a bench conference outside the presence of the jury and during the testimony of Officer Godley. 3 RR 88, 92 (#10-4). The officer testified that when he reviewed some of Petitioner's text messages the messages were concerning a drug transaction for GHB. *Id.* at 92. The officer then testified as to the effect of GHB. *Id.* The prosecutor never referred to GHB again, though she did reference drug transactions generally.

Petitioner's counsel argued that Petitioner could not have intended to steal the boat since the truck had his business information on it. His argument was basically that it would be stupid for Petitioner to make such a choice and that if Petitioner believed he was committing theft he would have removed the business information magnet from the side of the truck. The prosecutor used the evidence of drugs in her argument to rebut

this argument. She stated that the truck was a means to "not look suspicious." *Id.* at 122. Alternatively, she contended that Petitioner was "dumb enough to do that. Somebody high on dope, dumb enough to do that." *Id.* Again, far from inflaming the jury about GHB, Petitioner's drug transactions, or drug use, she was using the evidence of drugs to explain why Petitioner may have made the decision to engage in theft in a vehicle with his information on it. Petitioner has failed to show that, were it not for the prosecutor's references to drugs, or the brief testimony about GHB, there is a reasonable probability that the verdict would have been different.

### 7.   Vindictive Prosecution (Part g)

Petitioner claims that his failure to plead guilty "enraged [the] prosecutor and [Petitioner's] decision to have a trial by jury generated the notice of intent to enhance." Petitioner also contends that his equal protection rights were violated due to selective prosecution because the other people in the truck with Petitioner had similar backgrounds but were prosecuted differently.

In examining a claim of vindictive prosecution, a court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events should indicate to a reasonable minded defendant that the prosecutor's decision was motivated by some purpose other than a vindictive one, no presumption of vindictiveness is created. *United States v. Wells,* 262 F.3d 455, 466-67 (5th Cir. 2001) (citing *United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th Cir. 1983) (en banc)).

Petitioner here has completely failed to meet the standard to show either vindictive or selective prosecution. He has provided not a shred of proof that the prosecution against him was motivated by anything other than his crime. Based on his prior convictions, Petitioner was always eligible to be prosecuted as a habitual offender in this case. Importantly, the Fifth Circuit has held that "due process is not violated when a state prosecutor exercises his discretion and charges a defendant as a habitual offender for refusing a plea bargain." *Smallwood v. Scott*, 73 F.3d 1343, 1351 (5th Cir.1996) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 357 (1978)). In addition, aside from his conclusory allegations, Petitioner makes no showing that he was similarly situated compared to the other potential defendants and thus he does not make a case for selective prosecution. Thus, Petitioner's claims of vindictive and selective prosecution are rejected.

### 8.    Coaching Witnesses (Part h)

Petitioner claims that the testimony at trial by Griggs and Sell was "staged." Petitioner contends that neither Sell nor Griggs were eyewitnesses, despite testifying as if they were. Petitioner does not identify the particular testimony he is disputing, nor does he offer any contrary evidence to rebut the testimony.

To the extent that Petitioner is alleging that the testimony was false, a criminal defendant is denied due process when the prosecution knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150 (1972); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). To obtain relief on such a claim, a petitioner must show that (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*,

992 F.2d 491, 497 (5th Cir. 1993). Perjured testimony is only material if it is also shown that there was a reasonable likelihood that it affected the jury's verdict. *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). Petitioner makes no showing of any of the requirements to prove false or perjured testimony.

Petitioner raised all of the above prosecutorial misconduct claims in his state habeas proceedings and the TCCA denied them. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claims of prosecutorial misconduct.

<u>CONCLUSION</u>

Petitioner's application for writ of habeas corpus is denied.

CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v.*

33

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's application for writ of habeas corpus is **DENIED**.

It is finally **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on March 4, 2026

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE